## GREGORY POOL *v.* TOM P. BELL
## (13497)

PETERS, C. J., HEALEY, SHEA, GLASS and HULL, Js.

Argued November 8, 1988—decision released January 3, 1989

*Michael D. Neubert,* with whom was *Elizabeth McLaughlin,* for the appellant (defendant).

*Robert I. Reardon, Jr.,* with whom was *John J. Nazzaro,* for the appellee (plaintiff).

SHEA, J. The dispositive issue in this case is whether, during closing argument, counsel may use mathematical formulae as a basis for arriving at a pecuniary value of the plaintiff's personal injuries. Consistent with our holding in *Carchidi* v. *Rodenhiser,* 209 Conn. 526, 551 A.2d 1249 (1988), we conclude that counsel may not, because this practice improperly influences the jury in arriving at a verdict. Accordingly, the judgment for the plaintiff in this medical malpractice case is set aside and the case is remanded to the trial court for a new trial.

In this action, the plaintiff, Gregory Pool, claimed that the defendant, Tom P. Bell, a general surgeon, negligently performed a lymph node biopsy on the right side of the plaintiff's neck, in that the defendant damaged the plaintiff's long thoracic and spinal accessory nerves during the operation. The plaintiff testified that as a result of the operation, he suffered pain and stiffness in his right arm and shoulder, that his ability to perform his work as a pipefitter at Electric Boat was impaired, and that he was no longer able to participate in certain sports or to perform simple household tasks.

The trial court permitted the plaintiff's counsel in closing argument to use a blackboard to set forth a per diem mathematical formula for use by the jury in computing the damages to be awarded to the plaintiff. The defendant took an exception to this ruling. On the blackboard, counsel for the plaintiff set out six categories of damages: medical expenses, pain and suffering, mental distress, permanent disability, loss of ability to do household duties, and loss of enjoyment of activities. The plaintiff's counsel then assigned a dollar value to

each item of damages and multiplied each amount, except medical expenses, by 15,178, the number of days corresponding to the period from the date of the operation to the probable date of the plaintiff's death, based upon his 37.3 year life expectancy at the time of trial.[1] The totals for each category were then added for a grand total of $345,851, which counsel for the plaintiff told the jury was a fair amount to award the plaintiff.

The jury returned a verdict of $250,000 for the plaintiff. Thereafter, the defendant moved to set aside the verdict on the ground that the court had erred in permitting counsel to use a mathematical formula in closing argument to arrive at a specific monetary sum for an award of damages. The trial court denied the motion. This appeal followed.

On appeal, the defendant claims that the trial court erred in: (1) permitting the plaintiff's counsel in closing argument to use a mathematical formula to arrive at a monetary value for the plaintiff's personal injuries; (2) excluding the testimony of one of the defendant's expert witnesses for untimely disclosure; (3) permitting one of the plaintiff's expert witnesses to testify as to the standard of care for a general surgeon; (4) permitting the plaintiff's medical witnesses to testify as to the plaintiff's ability to perform his job as a pipefitter; and (5) failing to set aside the verdict as excessive. We conclude that the trial court erred in permitting the plaintiff's counsel to use a mathematical formula in his closing argument. Accordingly, we remand the case for a new trial. We discuss the defendant's second, third and fourth claims only for the purpose of the new trial and conclude that the trial court's rulings were not improper. Because we set aside the judgment in this case, we need not discuss the defendant's fifth claim.

---

[1] For example, the plaintiff assigned a value of $10 per day for future pain and suffering, $5 per day for permanent disability, and $1 per day for the loss of ability to do household duties.

## I

The defendant claims that the trial court erred in permitting the plaintiff's counsel in closing argument to use a mathematical formula to arrive at a monetary value for the plaintiff's personal injuries. This issue is controlled by our holding in *Carchidi* v. *Rodenhiser,* supra, which was argued on the same day as the case at hand. We find error.

In *Carchidi,* the trial court permitted counsel for the plaintiff to state to the jury his belief as to the pecuniary value of the plaintiff's personal injury claim. This court set aside the verdict, because of the risk of improper influence upon the jury from this practice. "Stating the amount claimed, whether in summation or in the pleadings, has the effect of instilling, at least as a starting point, a specific monetary figure in the minds of the jurors. Because counsel are aware of this effect, either practice encourages exorbitant demands by counsel." Id., 533. From our conclusion in *Carchidi* that counsel may not argue the pecuniary value of the plaintiff's personal injuries by suggesting specific sums to be awarded for such intangibles as pain and related disability, it necessarily follows that counsel may not indicate the monetary components used to arrive at the sums suggested for such elements of damages. We note that fewer courts favor an argument based on a mathematical formula than favor a "lump sum" argument. See annot., 3 A.L.R.4th 940; annot., 14 A.L.R.3d 531, 541. Further, in *Levin* v. *Ritson,* 179 Conn. 223, 227, 425 A.2d 1279 (1979), this court drew a distinction between suggesting a sum to be awarded for pain and suffering and using a mathematical formula based on speculative factors. Because we conclude that our holding in *Carchidi* is applicable to both types of arguments, we need not decide whether our holding in *Levin* v.

*Ritson* left the use of mathematical formulae in closing argument to the discretion of the trial court, as that question is now academic.

## II

The defendant's next claim is that the trial court abused its discretion in excluding the testimony of Richard Alessi, a neurologist, because of untimely disclosure by the defendant of his intention to use this expert witness. As with the defendant's third and fourth claims we consider this claim only because the issue may again arise at the new trial.

The plaintiff served a set of interrogatories on the defendant on June 14, 1985, in which he asked the defendant to identify each person the defendant expected to call as an expert witness at trial. On August 9, 1985, the defendant responded "undetermined at this time," naming no experts. On January 29, 1986, and on May 23, 1986, the defendant supplemented his responses to the plaintiff's questions, but did not name his expected witnesses.

On August 4, 1986, the plaintiff filed a motion to compel disclosure of the defendant's expert witnesses. The court, *Norko, J.,* in an August 18, 1986 ruling, ordered disclosure of the defendant's experts within forty-five days from the date of the depositions of two of the plaintiff's experts. This period was to expire on January 3, 1987. On December 29, 1986, the defendant disclosed Charles Polivy, a general surgeon, as his expert, but did not mention Alessi. Further, at neither the first pretrial conference on November 20, 1986, nor the second on February 25, 1987, did the defendant disclose Alessi as an expert.

On July 7, 1987, three weeks before the scheduled trial date, the defendant disclosed that he intended to use Alessi as an additional expert. On July 8, 1987, the

plaintiff filed a motion in limine to preclude Alessi from testifying, on the ground that the defendant had not complied with the court's order to disclose experts by January 3, 1987. At the hearing on the motion, which was not transcribed, the court granted the plaintiff's motion. At the hearing following the granting of the defendant's motion to reargue, which was transcribed, counsel for the defendant confirmed that the defendant had been consulting with Alessi for over one year. Thereafter, the court again granted the plaintiff's motion.

A trial court's decision on whether to impose the sanction of excluding the testimony of a party's expert witness rests within the court's sound discretion. See *Filisko* v. *Bridgeport Hydraulic Co.*, 176 Conn. 33, 40, 404 A.2d 889 (1978); see also *Pavlinko* v. *Yale-New Haven Hospital*, 192 Conn. 138, 144, 470 A.2d 246 (1984) (discussing sanctions pursuant to Practice Book § 231). The action of the trial court is not to be disturbed unless it has abused its broad discretion, and in determining whether there has been such abuse every reasonable presumption should be made in favor of its correctness. *Camp* v. *Booth*, 160 Conn. 10, 13, 273 A.2d 714 (1970); *Sturdivant* v. *Yale-New Haven Hospital*, 2 Conn. App. 103, 108, 476 A.2d 1074 (1984). "In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." *DiPalma* v. *Wiesen*, 163 Conn. 293, 298–99, 303 A.2d 709 (1972).

We conclude that the trial court could reasonably have viewed the late date at which the defendant disclosed Alessi as the sort of "cat and mouse" game that the rules of discovery and production were designed to discourage. See *Sturdivant* v. *Yale-New Haven Hospital*, supra, 106. Undoubtedly, one factor influencing the trial court was that the trial was to begin shortly, and therefore, the plaintiff would have had little

time to discover and investigate properly Alessi's opinions. We note, however, that this ruling would not be of any force at the new trial, because the element of surprise has vanished and the circumstances of the new trial may afford the plaintiff ample opportunity to prepare properly for Alessi's expected testimony.

### III

The defendant's third claim is that the trial court erred in permitting John Ebersole, a neurologist, to testify as to the standard of care for a general surgeon. The defendant maintains that under the Appellate Court's holding in *Marshall* v. *Yale Podiatry Group,* 5 Conn. App. 5, 8–9, 496 A.2d 529 (1985), Ebersole should not have been permitted to testify on this issue, because the evidence did not indicate any overlap between the specialties of general surgery and neurology or that the same standard of care is applicable to both.

" 'The determination of the qualification of an expert is largely a matter for the discretion of the trial court.' " *Oborski* v. *New Haven Gas Co.,* 151 Conn. 274, 280, 197 A.2d 73 (1964). "The witness must demonstrate a knowledge acquired from experience or study of the standards of the specialty of the defendant physician sufficient to enable him to give an expert opinion as to the conformity of the defendant's conduct to those particular standards, and not to the standards of the witness' particular specialty if it differs from that of the defendant." *Fitzmaurice* v. *Flynn,* 167 Conn. 609, 618, 356 A.2d 887 (1975). Without ruling on the correctness of the "overlap" standard from *Marshall* v. *Yale Podiatry Group,* supra, we reiterate that the " 'crucial question is whether . . . [the expert] knows what . . . [the standards of practice] are.' " *Fitzmaurice* v. *Flynn,* supra, 617, quoting *Ardoline* v. *Keegan,* 140 Conn. 552, 557, 102 A.2d 352 (1954).

Ebersole testified that because of his specialty, he is required to be familiar with the procedures that are carried out by surgeons in the performance of a lymph node biopsy. In his practice, he testified, he routinely receives referrals from surgeons and is expected to determine the cause of neurological complications of operations to assist the referring surgeon in diagnosis and treatment. Further, he testified that as a professor at the Yale School of Medicine, he instructs residents and physicians about the neurological complications of surgery. In view of this testimony, we conclude that the trial court did not abuse its discretion in permitting Ebersole to give his opinion as to the standard of care for a general surgeon performing a lymph node biopsy.

## IV

The defendant next claims that the trial court erred in permitting the plaintiff's medical experts, Charles Dyer and John Ebersole, to testify regarding the plaintiff's ability to perform his job as a pipefitter at Electric Boat. The defendant claims that these experts' opinions were based on speculation, because neither witness was familiar with the plaintiff's work history. We find no error in the trial court's ruling.

There are no precise facts that must be proved before an expert's opinion may be received in evidence. *Waldron* v. *Raccio,* 166 Conn. 608, 614, 353 A.2d 770 (1974). Rather, it is largely a matter of judicial discretion as to whether a witness has been shown to have sufficient experience and opportunity of observation to render his opinion. Id.

Dyer testified that he had been a practicing general surgeon in New London for thirty-three years and that he was familiar with the duties of pipefitters at Electric Boat, because he had treated many of them. He further testified that a physicial examination of the

plaintiff two years after the surgery revealed, in his opinion, that the plaintiff's ability to perform the duties of a pipefitter had been seriously impaired. Ebersole testified that he had interviewed, examined and tested the plaintiff on four separate occasions over a period of three years. Further, he testified that he was familiar with the work of a pipefitter and that he had determined that as a result of the plaintiff's injuries, the plaintiff would be unable to perform fully the duties of a pipefitter. In light of the testimony of Dyer and Ebersole as to their training, experience and investigation, the trial court did not abuse its discretion in admitting their opinions as to the plaintiff's ability to perform his work duties. The trial court could reasonably have concluded that this evidence was relevant to corroborate the plaintiff's claim that he feared losing his job because of his inability to perform certain tasks, a condition for which he sought compensation as part of his mental distress claim.

There is error, the judgment for the plaintiff is set aside and the case is remanded for a new trial.

In this opinion the other justices concurred.