KITCHENS, Justice,
Concurring in Part and Dissenting in Part:
¶ 23. I agree with the majority’s analysis regarding Memorial Hospital at Gulf-port, insofar as today’s decision holds that McDonald’s case is not time-barred by virtue of the discovery rule but that the plaintiff offered no evidence of causation against MHG. However, I find fault with the majority’s analysis concerning expert witnesses, and therefore, I dissent from the determination that the plaintiff failed to offer qualified experts.
¶ 24. It is undisputed that, generally speaking, Mississippi law requires medical-malpractice plaintiffs to use expert witnesses to “identify and articulate the requisite standard that was not complied with ... [and] also [to] establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries.” Barner v. Gorman, 605 So.2d 805, 809 (Miss.1992). The use of expert witnesses in Mississippi courtrooms is governed by *183 Mississippi Rule of Evidence 702, which defines an expert as one “qualified ... by knowledge, skill, experience, training, or education” who may impart that expertise “[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.” Miss. R. Evid. 702. Rule 702 serves only to distinguish fact witnesses from witnesses with some degree of specialized knowledge who may provide assistance to jurors in their labors as finders of fact. The rule serves to separate witnesses possessed of relevant factual information from those who, because of special knowledge about a particular subject are, for evidentiary purposes, deemed experts and are allowed to give opinions.
¶ 25. The courts of this state and others acknowledge this principle through the recognition that a plaintiffs medical-expert witness need not be “of the same specialty as the doctor about whom the expert is testifying,” Hubbard v. Wansley, 954 So.2d 951, 957 (Miss.2007), because “[i]t is the scope of the witness’ knowledge and not the artificial classification by title that should govern the threshold question of admissibility.” Id. (quoting West v. Sanders Clinic for Women, P.A., 661 So.2d 714, 719 (Miss.1995)). Rule 702 is broadly constructed and broadly construed. It “seeks to encourage the use of expert testimony in non-opinion form when counsel believes the trier can draw the requisite inference.” Miss. R. Evid. 702 cmt. (emphasis added). It does not purport to restrict expert testimony to the domain of a tiny class of geniuses, but merely to differentiate between experts and laypersons. Rule 702 sets a “low threshold for competency” in favor of courts’ “preference for leaving matters of credibility1 to the judgment of the jury....” State v. Calliham, 2002 UT 86, ¶ 27, 55 P.3d 573, 583 (Utah 2002).
¶ 26. Despite such traditionally broad treatment, in recent years, this Court consistently has tightened the requirements for expert testimony in medical-malpractice cases. See Hubbard, 954 So.2d at 966-67 (Diaz, J., dissenting). In 1987, for example, the Court followed the consensus approach, quoting the third edition of McCormick on Evidence, by holding that although expert testimony was required, “a specialist in a particular branch within a profession will not be required.” Brown v. Mladineo, 504 So.2d 1201, 1202 (Miss.1987). Today, the national consensus remains broadly permissive of expert testimony; a party seeking to admit expert testimony need only demonstrate “that the witness has sufficient skill or knowledge related to the pertinent field or calling that his inference will probably aid the trier in the search for truth.” McCormick on Evidence § 13 (Kenneth S. Broun ed., 6th ed.2006) (emphasis added). As recently as 2002, Mississippi courts treated Rule 702 broadly enough to permit “a physician in one specialty [to] testify as to the standard of care in another specialty, provided he is familiar with the standards of that other specialty.” Robert A. Weems & Robert M. Weems, Mississippi Law of Torts § 4:1, at 48 (2002). This rule is as pragmatic as it is principled. In addition to adhering to the broad construction of Rule 702, courts’ permissive attitudes toward expert witnesses in medical-malpractice suits recognize “the traditional reluctance of members of the profession to testify against each other, and the difficulty of securing the testimony of a specialist in the same field as the defendant.” Bender on Medical Malpractice § 29.02(3) (2008).
¶ 27. More recently, though, Mississippi’s longstanding, broad treatment of Rule 702 has been cast aside in favor of increasingly demanding requirements. Although our most recent decisions purport to adhere to the traditional standard, this Court *184 has demanded more and more that “an expert ... be of the same specialty as the doctor about whom the expert is testifying,” while professing that such a rigid standard “is generally not required.” Hubbard, 954 So.2d at 957.
¶ 28. In 2004, for example, the Court found no error in a trial court’s decision to allow a defendant’s expert witness because all that was required to satisfy Rule 702 was “something more than unsupported speculation of subjective belief that is grounded in methods and procedures of science.” Poole v. Avara, 908 So.2d 716, 723 (Miss.2005). Whatever imperfections existed in the witness’s qualifications, the Court reasoned, would be properly addressed during cross-examination. Id. at 724. That same holding described Rule 702 as “unquestionably flexible.” Id. at 723. But only a year later, the Court found that a trial court correctly disqualified a family physician from testifying for a plaintiff about dialysis, a common procedure, because the witness “did not have the specialized knowledge to assist the trier of fact to understand the evidence.... ” Cheeks v. Bio-Medical Applications, Inc., 908 So.2d 117, 121 (Miss.2005). By 2007, the Court’s application of our “unquestionably flexible” Rule 702 had grown so rigid that it found no error in a trial court’s decision to disqualify a seasoned neurologist seeking to testify about a neurological condition because, according to the Court, the plaintiff offered no evidence that this neurologist “ha[d] any familiarity with” the relevant neurological condition. Hubbard, 954 So.2d at 958.
¶ 29. Our case law now stands witness to the simple truth that Mississippi no longer adheres to the national standard. The restrictive approach enunciated in Hubbard, and built upon today, conflicts with the expert-witness evidentiary rules of virtually every state in the country and may very well be the most restrictive approach in the nation. While this Court now requires nearly identical curricula vitae between defendant and witness, other states generally accept witnesses based not on their particular specialties but on the extent of their knowledge. In Pool v. Bell, 209 Conn. 536, 551 A.2d 1254 (1989) (superseded by statute on other grounds), the Connecticut Supreme Court allowed a neurologist to testify as an expert against a general surgeon, despite the fact that the witness was not a professional clone of the defendant. “[T]he crucial question is whether the expert knows what the standards of practice are.” Id. at 542, 551 A.2d 1254 (citations omitted). In Roberts v. Warren, 791 So.2d 1278 (La.2001), the Louisiana Supreme Court found an oral surgeon qualified to testify as an expert in a dental malpractice trial, not because the expert was familiar with the relevant procedure or even because of his particular expertise with oral surgery, but because “where there is a uniform nationwide method of performing a particular medical procedure, an expert having knowledge of such method is qualified to testify, and the testifying expert in this circumstance is not constrained by the need to have practiced ... under similar circumstances.” Id. at 1280. Georgia law, similarly, does not require an expert witness in a medical-malpractice case to be a specialist in the same area of medicine as the defendant. Rixey v. West Paces Ferry Hosp., Inc., 916 F.2d 608, 612 (11th Cir.1990) (applying Georgia law described in Beatty v. Morgan, 170 Ga.App. 661, 317 S.E.2d 662, 664 (1984)). Florida has permitted a neurosurgeon to testify against a gynecologist, Brown v. Sims, 538 So.2d 901 (Fla.Dist.Ct.App.1989), just as the South Carolina Supreme Court found an emergency medical technician qualified to testify to the standard of care owed by a defendant anesthesiologist for the latter’s performance dur *185 ing an intubation. Gooding v. St. Francis Xavier Hosp., 326 S.C. 248, 487 S.E.2d 596 (1997). “A medical practitioner’s experience teaching and interacting with persons in the applicable specialty are sufficient to support his qualification as an expert. Qualification depends on the particular witness’ reference to the subject.” Id. at 253, 487 S.E.2d 596.
¶ 30. Simply put, this Court has abandoned adherence to the traditional interpretation of Rule 702. Gone are the days when this Court found Rule 702 satisfied when an expert was qualified to testify with an opinion grounded in “something more than unsupported speculation of subjective belief that is grounded in methods and procedures of science,” Poole v. Avara, 908 So.2d 716, 723 (Miss.2005), and this Court seems increasingly disinterested in the plain language of the rule itself, which clearly notes that expert witnesses may be qualified not only by virtue of experience, but also by knowledge, skill, training, or education. Miss. R. Evid. 702. In the case at bar, any deficiencies in these experts’ knowledge could have been exposed by competent cross-examination.
¶ 31. Plaintiffs expert witnesses in the instant case undoubtedly satisfy Mississippi’s traditional requirements for qualification of expert witnesses. Dr. Rodrigo Galvez, one of McDonald’s proffered witnesses, testified in his deposition that he has knowledge of ear, nose, and throat treatment dating back to his days as an intern in New York in the 1960s. He performed intubations and EGDs during his time in medical school, and he has experience charting patients under do-not-resuscitate status and explaining that status to patients’ families. Likewise, Dr. George Nichols is also qualified to testify under the Court’s longstanding Rule 702 treatment. As a forensic pathologist, Nichols’s curriculum vitae undoubtedly does not parallel Teran’s, but he deposed that he is well studied in the area of “human biologic fluids ... [,] how they relate to disease or to health ... [and] how a person goes from alive to dead.” Nichols and Galvez certainly have the “knowledge, skill, experience, training, or education” necessary to “assist the trier of fact to understand the evidence.... ” Miss. R. Evid. 702.
¶ 32. But even under the Court’s new, overly restrictive approach legislated in Hubbard, the proffered experts still should have been permitted to testify. As forensic pathologists, Galvez and Nichols both are deeply experienced in the innumerable causes of death that human beings encounter. In Hubbard, this Court found “no evidence that [the proffered expert witness] has any familiarity with the standard of care that would be required.... ” Hubbard, 954 So.2d at 958 (emphasis added). No such lack of evidence exists in this case. As Galvez told his deposer, “I know the lung pathology very well, but I wouldn’t dare to treat anybody with a lung problem. But I know when the treatment is good or causes some damage to the patient; that’s part of pathology.” As was the case in the Pennsylvania case of Smith v. Paoli Memorial Hospital, 885 A.2d 1012 (Pa.Super.2005), the experts’ bodies of knowledge overlap the relevant area of medical care to a sufficient degree to make their testimony helpful to the trier of fact. Unless we are prepared again to trim back Rule 702 and, for all practical purposes, jettison the notion that “the artificial classification by title ... should [not] govern the threshold question of admissibility,” Hubbard, 954 So.2d at 957, then it cannot be said that McDonald’s experts lacked the “knowledge, skill, experience, training, or education” to “assist the trier of fact to understand the evidence.... ” Miss. R. Evid. 702.
*186 ¶ 33. A trial court necessarily abuses its discretion when it applies an incorrect legal standard. See Burkett v. Burkett, 537 So.2d 443, 446 (Miss.1989). In this case, the trial court failed to look beyond the proffered experts’ professional titles to consider knowledge, training, or education. As a violation of the plain language of Rule 702, this oversight amounts to an abuse of discretion.
¶34. Therefore, I would reverse the trial court’s grant of summary judgment in favor of Dr. Teran and remand McDonald’s relevant claims for trial. From my learned colleagues’ decision to the contrary, I respectfully dissent.
GRAVES, P.J., JOINS THIS OPINION.