******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KIRK B. DAVIS ET AL. *v.* PROPERTY OWNERS
ASSOCIATION AT MOODUS LAKE
SHORES, INC., ET AL.
(AC 39163)

DiPentima, C. J., and Keller and Elgo, Js.

*Syllabus*

The plaintiff homeowners sought a declaratory judgment to determine, inter
alia, that they had an easement by implication over certain real property
of the defendants, a property owners association and certain of its
officers. The plaintiffs, whose real property abutted a portion of the
association's property, claimed that the only means of access from their
property to a certain public road was via a driveway over a portion of the
association's property. The trial court summarily denied the plaintiffs'
motions in limine to preclude testimony by certain of the defendants'
expert witnesses and, following a trial to the court, rendered judgment
for the defendants, from which the plaintiffs appealed to this court. *Held*:

1. The trial court did not abuse its discretion in denying the plaintiff's motions
in limine, which sought to preclude the testimony of the defendant's
experts, H, a surveyor, and D, a photogrammetrist, on the ground that
they were disclosed too late; the plaintiffs, who received notice that the
defendants planned to call a surveyor ten months before trial and that
the defendants planned to present the testimony of a photogrammetrist
nine months before trial, failed to demonstrate that the lengthy delay
between the time of disclosure and the time when trial resumed did
not afford them an ample opportunity to rebut the testimony at issue, as
the lengthy delay gave them ample opportunity to mitigate any purported
harm caused by the timing of the defendants' disclosure in that the
plaintiffs were able to depose the defendants' experts and to consult
their own expert in order to present rebuttal evidence, and the plaintiffs
never alerted the court that they needed an additional continuance for
the purposes of rebutting the untimely disclosed evidence, did not renew
their objection when the defendants' experts testified and, in fact, stipu-
lated to the admissions of D's photogrammetric analysis and H's compos-
ite map.

2. The plaintiffs' claim that the trial court improperly failed to find that
they had an easement by implication over the defendants' property was
unavailing; the trial court having thoroughly addressed the issues raised
by the plaintiffs with respect to this claim in a thorough and well rea-
soned memorandum of decision, this court adopted the trial court's
memorandum of decision as a proper statement of the facts and the
applicable law on those issues.

Argued April 17—officially released July 24, 2018

*Procedural History*

Action for, inter alia, a judgment declaring that the
plaintiffs have an easement over certain of the named
defendant's real property, and for other relief, brought
to the Superior Court in the judicial district of Middle-
sex, where the court, *Aurigemma, J.*, granted the defen-
dants' motion for a nonsuit as to certain counts of the
complaint; thereafter, the matter was tried to the court,
*Domnarski, J.*; subsequently, the court denied the plain-
tiffs' motions to preclude certain evidence; judgment
for the defendants, from which the plaintiffs appealed
to this court. *Affirmed*.

*Scott W. Jezek*, with whom, on the brief, was *Deborah
L. Barbi*, for the appellants (plaintiffs).

*Troy A. Bataille*, for the appellees (defendants).

*Opinion*

KELLER, J. The plaintiffs, Kirk B. Davis and Elyssa J. Davis, appeal from the judgment of the trial court in favor of the defendant Property Owners Association at Moodus Lake Shores, Inc.[1] The plaintiffs claim on appeal that the court erred by (1) denying their motions in limine seeking to preclude the defendants' experts from testifying and (2) not finding that the plaintiffs had an easement by implication over the defendants' property. We affirm the judgment of the trial court.

On January 19, 2012, the plaintiffs commenced a ten count action against the defendants seeking to quiet title on a parcel of land, a declaratory judgment for an easement, and monetary damages for tortious conduct. In the first count of the complaint, the plaintiffs sought a declaratory judgment establishing an easement over the association's property. In support, the plaintiffs alleged the following: In 2003, the plaintiffs purchased a "certain . . . parcel of land, with the buildings and other improvements thereon, known as 38 Hilltop Road, Moodus"; the association is "the incorporated association of owners of land at Moodus Lake Shores, charged with the responsibility of maintenance as a residential resort area"; the plaintiffs are members of the association; the association owns the parcel of land abutting the eastern edge of the plaintiffs' property; Alan B. Collette is a member of the board of directors and the current president of the association; Donald Sama is a member of the board of directors for the association; Gail Sama is a member of the board of directors of the association and the current secretary; since 1962, the only means of access to a public road from the plaintiffs' property is by crossing over the northwest corner of the association's parcel; between 1962 and 2007, the plaintiffs' and their predecessors had "unfettered access and egress" from their property to Hilltop Road via a driveway over the northwest corner of the association's lot; in 2007, the defendants installed wheel stops on the association's parcel, affecting the plaintiffs' access to their property; in 2009, the wheel stops were removed and the plaintiffs installed a planter "on or near the boundary line" of the association's and the plaintiffs' properties; in August, 2010, the defendants removed the planter and built a fence that substantially blocked the plaintiffs' ability to gain access to their property; in November, 2011, the defendants extended the fence, completely blocking off the plaintiffs' access and entrapping their vehicles, leading to police involvement on multiple occasions; the plaintiffs no longer have a practical method of reaching a public road; and the defendants no longer acknowledge that the plaintiffs have an easement over the association's property.

In the second count, the plaintiffs sought a judgment quieting title to a northwestern portion of the association's parcel pursuant to General Statutes § 47-21.[2] In

count three, the plaintiffs claimed that an easement by implication[3] over that northwestern portion of the association's property is reasonably necessary for the plaintiffs in order for the plaintiffs to have access to a public road. In the fourth count, the plaintiffs claimed an easement by prescription over the same portion of the association's lot.

In the fifth count, the plaintiffs alleged that the defendants have "maliciously erected fences, barriers or other structures blocking the access and egress rights of the plaintiffs, and trapping their motor vehicles inside of said fences and barriers . . . ." In addition, the plaintiffs alleged that the fences "have no purposes and/or are useless to the defendants," and have impaired the value of the plaintiffs' property and diminished the plaintiffs' enjoyment of it. The plaintiffs sought relief pursuant to General Statutes §§ 52-570[4] and 52-480."[5]

In counts six through nine, the plaintiffs brought causes of action seeking monetary damages from the defendants. In count six, the plaintiffs claimed that the defendants were liable for the intentional infliction of emotional distress for their conduct toward the plaintiffs associated with the construction and alterations to the fence. In count seven, the plaintiffs alleged that the defendants, by constructing the fence, created an unreasonable risk of physical and emotional harm. In the eighth count, the plaintiffs alleged that the defendants' use of their property amounted to a private nuisance. In the ninth count, the plaintiffs alleged that the defendants were liable for civil conspiracy for having performed the unlawful acts described in counts six, seven, and eight.

In the tenth count, the plaintiffs sought to remove Collette, Donald Sama, and Gail Sama as directors of the association. In support of this count, the plaintiffs stated, among other things, that Collette, Donald Sama, and Gail Sama breached their fiduciary duty to the association by ignoring valid votes of the board of directors/members, failing to provide full details of board actions and meeting minutes to members, taking unauthorized actions, eliminating the bidding process for roadwork contracts, "making or breaking rules as they deem fit," removing other board members, and "treating the [association] as their own personal fiefdom by ignoring votes, ignoring budgets, and holding secret or illegal meetings . . . ."[6]

The defendants answered on November 20, 2012, and denied the plaintiffs' claims. In addition, the defendants raised nine special defenses. Specific to the plaintiffs' easement by implication claim, the defendants asserted that the plaintiffs "could and can" access their property without crossing over the association's property.

On June 25, 2014, the defendants filed a motion for nonsuit pursuant to Practice Book §§ 13-14 and 17-31.

The defendants argued that, despite court orders to do so, the plaintiffs had not provided evidence to support their causes of action seeking damages for personal injuries and emotional distress. The plaintiffs did not respond to this motion. On September 2, 2015, the court, *Aurigemma, J.*, granted this motion for nonsuit on counts six through nine, and the portion of count five seeking monetary damages. See footnote 6 of this opinion.

Following a bench trial, the court found the following facts. The plaintiffs purchased their lakefront property in 1998; at this time, there was a small seasonal house on the property. The association's property, which is comprised of a parking lot and a beach area, abuts the eastern edge of the plaintiffs' property. Hilltop Road runs along the northern edge of the plaintiffs' property.

When the plaintiffs' predecessors in interest, Joseph A. Querion and Frances B. Querion, purchased the parcel that now comprises a majority of the plaintiffs' property, it could be accessed only by foot. In order to gain vehicle access to the lot, the Querions purchased a parcel of land from the defendants' predecessors in interest. The "deed for the land acquired by the Querions, to be used to access their property, did not contain any grant of easement to use the adjoining land of the association for purposes of ingress and egress. . . . Furthermore, there are no later deeds or grants in the chains of title for the plaintiffs' or [association's] property that establish a right-of-way or easement over the defendants' property in favor of the plaintiffs." "A driveway was constructed in 1966, which involved the removal of [a] ledge in the vicinity of Hilltop Road. To prevent erosion of the driveway, an erosion wall [made] of rocks was constructed in the vicinity of the thirty-five foot long common boundary [between the plaintiffs' and defendants' property]." This erosion wall was constructed entirely on the plaintiffs' property. As this erosion wall was sited between the historical driveway and the association's property, "the historical location of the subject driveway was entirely on the plaintiffs' property, and no portion was located on the [association's] property."

In 2003, the plaintiffs renovated their property. The plaintiffs extensively remodeled their house to convert it into a larger, year-round residence. In addition, the plaintiffs made alterations to the slope of their property and constructed a new driveway. The regrading efforts eliminated a two foot ledge between the plaintiffs' and the association's properties. A portion of the new driveway encroached on the association's property.

The renovations to the plaintiffs' property made it possible for vehicles to travel from the new driveway to the "vicinity of stairs on the [association's] property, which provided access to the beach. Between 2006 and 2011, the parties discussed the issue of the plaintiffs'

new driveway and the stairs. Several arrangements for protecting the safety of people using the stairs [were put in place by both parties], including a curb stop, a large planter, and a short barricade style fence. None of these arrangements produced long-lasting results that were acceptable to both parties. In September, 2011 . . . Collette, president of the . . . association, consulted an attorney about the rights and obligations of the association regarding the safety of members using the beach area . . . . In a letter to Collette, dated September 20, 2011, the attorney [wrote]: '[T]he [a]ssociation is within its legal rights and authority to act in connection with the use of its property by any party. . . . [T]he [a]ssociation is required to act in connection with the safety and protection of its members. . . . [F]ailure [to] act may result in a liability claim against the [a]ssociation. . . . Further, failure of the [a]ssociation to assert its rights may result in a future claim of easement by extended use.' " After receiving this letter, the association installed a fence along the common boundary.

The court ruled in favor of the defendants on all remaining counts. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiffs claim that the court erred by denying their motions in limine seeking to preclude two of the defendants' expert witnesses, John L. Heagle, a surveyor, and Edward A. Dilport, a photogrammetrist,[7] from testifying at trial. The plaintiffs' main assertion is that these experts should not have been allowed to testify because they were disclosed too late.[8] The defendants argue that the plaintiffs were not prejudiced because they had sufficient time to prepare before the experts testified and had a chance to present rebuttal evidence. We agree with the defendants.

The following additional facts are relevant to this claim. On November 14, 2014, the plaintiffs filed a proposed scheduling order, which the court accepted. This order required the defendants to disclose their witnesses by April 1, 2014. Trial commenced on November 12, 2014, and continued on November 13, 18 and 19, 2014. The plaintiffs provided the defendants with an overlay map created by their expert, Ronald C. Hurlburt, a surveyor, as the trial commenced. After a discussion with the parties in a chambers conference, the court offered the defendants time to review this map and consult an expert of their own. The defendants disclosed that they planned to present the testimony of Heagle, a land surveyor, on December 2, 2014. In response, on January, 16, 2015, the plaintiffs requested a continuance, seeking more time to investigate the content of Heagle's proposed testimony, which the court granted. The trial resumed on September 15, 16 and 17, 2015.

On December 2, 2014, the defendants disclosed Heagle, a land surveyor and civil engineer, as an expert witness. Heagle was expected to testify about "the boundary issues and questions relevant to [the present case] and, specifically, including the location and evidence pertaining to the easement or right-of-way at issue." On January 20, 2015, the defendants again filed a motion to disclose Heagle as an expert witness, essentially listing the same expected testimony.

On January 20, 2015, the defendants disclosed Lemuel G. Johnson, Jr., a photogrammetrist, as an expert. The defendants disclosed that Johnson was "expected to testify concerning aerial photographs taken of the property in 2001, which . . . are maintained in the ordinary course of Golden Aerial Survey's[9] business and contained in its photographic inventory not expressly for the purpose of this litigation. In addition, [Johnson] is expected to testify concerning digital photogrammetric elevation measurements taken from the 2001 aerial photography of the subject site as depicted on the photogrammetric map of the subject area. . . . Finally, [Johnson] is expected to testify concerning the contents of [the] photogrammetric map of the subject area on [Hilltop Road] . . . ." (Footnote added.)

Due to concerns about Johnson's health, on June 4, 2015, the defendants filed a motion to disclose Dilport, another photogrammetrist and employee of Golden Aerial Surveys, Inc. The listed subject matter of Dilport's expected testimony was, in substance, the same as the proposed subject matter of Johnson's testimony. Specifically, the defendants disclosed that Dilport was expected to testify about the location of the historic driveway by analyzing aerial photographs taken in 2001.

The plaintiffs deposed Heagle once on December 3, 2014, and, again, on February 11, 2015. The plaintiffs deposed Dilport on July 2, 2015. On September 4, 2015, the plaintiffs disclosed Terry LeRoux, a photogrammetrist, as an expert witness. The plaintiffs stated that LeRoux would be a rebuttal witness and was expected to testify about high resolution photographs and anaglyphs[10] of the site.

On September 11, 2015, the plaintiffs filed motions in limine to preclude the testimony of Heagle and Dilport. The plaintiffs premised their arguments in support of these motions on the fact that Dilport and Heagle were disclosed late, and that it would be prejudicial to allow them to testify because there would not be sufficient time to prepare for their testimony. They asserted that the late disclosure was particularly harmful with respect to Dilport because the January 20, 2015 disclosure was the first time that the defendants had mentioned that a photogrammetrist would testify. The plaintiffs noted that the scheduling order accepted by the court required the parties to disclose expert wit-

nesses by April 1, 2014. In addition, they argued that Practice Book § 13-4 prohibits the late disclosure of experts. The defendants did not file a motion in opposition to the plaintiffs' motions in limine. The court summarily denied the plaintiffs' motions, without prejudice, and trial resumed on September 15, 2015.[11]

Johnson and Dilport both testified at trial. After Johnson and Dilport testified, the plaintiffs presented the testimony of LeRoux in rebuttal. The court found Johnson and Dilport to be credible and relied on their opinions in making factual findings. The court noted that LeRoux' testimony "generally agreed with Dilport's testimony and opinions." The court found, however, that LeRoux' lack of "any control point data . . . diminished the weight of his testimony."

We begin by setting forth the standard of review and principles of law pertinent to this claim. "[T]he motion in limine . . . has generally been used in Connecticut courts to invoke a trial judge's inherent discretionary powers to control proceedings, exclude evidence, and prevent occurrences that might unnecessarily prejudice the right of any party to a fair trial. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Citation omitted; internal quotation marks omitted.) *McBurney* v. *Paquin*, 302 Conn. 359, 378, 28 A.3d 272 (2011).

Practice Book § 13-4 (h) provides: "A judicial authority may, after a hearing, impose sanctions on a party for failure to comply with the requirements of this section. An order precluding the testimony of an expert witness may be entered only upon a finding that: (1) the sanction of preclusion, including any consequence thereof on the sanctioned party's ability to prosecute or to defend the case, is proportional to the noncompliance at issue, and (2) the noncompliance at issue cannot adequately be addressed by a less severe sanction or combination of sanctions." The plaintiffs argue that they were denied a fair trial because the defendants disclosed Heager and Dilport too late.[12] The plaintiffs assert that the defendants, by disclosing these experts in the manner in which they did, engaged in the "cat and mouse game" that timely disclosure is meant to prevent. See *Pool* v. *Bell*, 209 Conn. 536, 541, 551 A.2d 1254 (1989). In *Pool*, our Supreme Court decided that a trial court's decision to preclude an expert witness from testifying when a party elected to disclose that witness only three weeks prior to the start of trial, having consulted with that expert for more than one

year and having received a court order to disclose experts during that time, was not an abuse of discretion on the basis of the facts of that case. Id., 540–42. The present case does not contain the same facts that supported affirming the preclusion of the untimely disclosed expert in *Pool*. In the present case, the plaintiffs received notice that the defendants planned to call a surveyor ten months before trial resumed and that the defendants planned to present the testimony of a photogrammetrist nine months before trial resumed. Unlike *Pool*, the plaintiffs in the present case have failed to demonstrate that the lengthy delay between the time of disclosure and the time when trial resumed did not afford them an ample opportunity to rebut the testimony at issue. This lengthy delay gave the plaintiffs ample opportunity to mitigate any purported harm caused by the timing of the defendants' disclosure. Indeed, the record reveals that the plaintiffs took advantage of this opportunity to do so. The plaintiffs were able to depose the defendants' experts and they were also able to consult their own expert in order to present rebuttal evidence.

The defendants correctly assert that the plaintiffs could have sought a continuance to seek more time to prepare for trial. "A continuance is ordinarily the proper method for dealing with a late disclosure. . . . A continuance serves to minimize the possibly prejudicial effect of a late disclosure and absent such a request by the party claiming to have been thus prejudiced, appellate review of a late disclosure claim is not warranted." (Citations omitted; internal quotation marks omitted.) *Rullo* v. *General Motors Corp.*, 208 Conn. 74, 79, 543 A.2d 279 (1988). If the plaintiffs believed that they needed additional time, instead of filing motions in limine on the ground that disclosure was untimely, or after those motions were denied, the plaintiffs could have asked the court for more time to prepare for trial. Regardless, they cannot persuade us that the court abused its discretion by allowing Heagle and Dilport to testify on the ground that the defendants disclosed these witnesses late, when they never alerted the court that they needed an additional continuance for the purposes of rebutting the untimely disclosed evidence. Also, although invited by the court, the plaintiffs never renewed their objection when the defendants' experts testified and in fact stipulated to the admissions of Dilport's photogrammetric analysis and Heagle's composite map.

Thus, the court did not abuse its discretion by denying the plaintiffs' motions in limine seeking to preclude the testimony of Heagle and Dilport because by the time that those motions were presented to the court, which was just before the trial was set to resume, the plaintiffs could not demonstrate how they were prejudiced.

II

The plaintiffs' second claim is that the court erred by not granting them an easement by implication. After examining the record and the briefs and considering the arguments of the parties, we are persuaded that the court correctly rendered judgment in favor of the defendants. The issues raised by the plaintiffs in this claim were resolved properly in the trial court's thorough and well reasoned memorandum of decision. We therefore adopt the memorandum of decision as the proper statement of the relevant facts, issues and applicable law with respect to this issue only. *Davis* v. *Property Owners Association at Moodus Lake Shores, Inc.*, Superior Court, judicial district of Middlesex, Docket No. CV-12-6006823-S (February 24, 2016) (reprinted at 183 Conn. App. 704). It would serve no useful purpose for us to repeat the discussion contained therein. See *Seminole Realty, LLC* v. *Sekretaev*, 162 Conn. App. 167, 169, 131 A.3d 753 (2015), cert. denied, 320 Conn. 922, 132 A.3d 1095 (2016).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Alan B. Collette, Donald Sama, and Gail Sama also are defendants in this case. The Property Owners Association at Moodus Lake Shores, Inc., individually, will be referred to as the association. The term defendants will refer to Collette, the Samas and the association, collectively.

[2] General Statutes § 47-21 provides: "Any conveyance or lease, for any term, of any building, land or tenement, of which the grantor or lessor is ousted by the entry and possession of another, unless made to the person in actual possession, shall be void."

[3] "[A]n implied easement is typically found when land in one ownership is divided into separately owned parts by a conveyance, and at the time of the conveyance a permanent servitude exists as to one part of the property in favor of another which servitude is reasonably necessary for the fair enjoyment of the latter property. . . . In the absence of common ownership . . . an easement by implication may arise based on the actions of adjoining property owners. . . . There are two principal factors to be examined in determining whether an easement by implication has arisen: (1) the intention of the parties; and (2) whether the easement is reasonably necessary for the use and normal enjoyment of the dominant estate." (Internal quotation marks omitted.) *Sanders* v. *Dias*, 108 Conn. App. 283, 288, 947 A.2d 1026 (2008).

[4] General Statutes § 52-570 provides: "An action may be maintained by the proprietor of any land against the owner or lessee of land adjacent, who maliciously erects any structure thereon, with intent to annoy or injure the plaintiff in his use or disposition of his land."

[5] General Statutes § 52-480 provides: "An injunction may be granted against the malicious erection, by or with the consent of an owner, lessee or person entitled to the possession of land, of any structure upon it, intended to annoy and injure any owner or lessee of adjacent land in respect to his use or disposition of the same."

[6] Only the court's decision on the plaintiffs' easement by implication allegations, the third count of their complaint, is at issue on appeal.

[7] A dictionary defines photogrammetry as the "science of making reliable measurements by the use of usu[ally] aerial photographs in surveying and map making." Webster's New International Dictionary (3d Ed. 2002). A photogrammetrist is "a specialist in photogrammetry." Id.

[8] The defendants argue that the plaintiffs, by not objecting during the evidentiary portion of the trial, waived their claim that Dilport and Heagle should have been precluded from testifying. This assertion, however, is incorrect because, prior to the defendants' having presented the testimony of Dilport, the plaintiffs renewed their objection, stating: "[F]or the record, we had filed two motions in limine with respect to the disclosure of two expert witnesses by the defendant[s], [Heagle and Dilport], the essence of both being that they were untimely."

[9] Johnson, at the time the motion to disclose was filed, was an employee of Golden Aerial Surveys, Inc.

[10] A dictionary defines anaglyph as "a stereoscopic motion or still picture in which the right component of a composite image usu[ally] red in color is superimposed upon the left component in a contrasting color (as bluish green) to produce a three-dimensional effect when viewed through correspondingly colored filters in the form of spectacles." Webster's New International Dictionary (3d Ed. 2002).

[11] The court instructed the plaintiffs that it would reconsider their objection when the defendants' experts testified. At trial, the plaintiffs did not object when Heagle and Dilport testified, and they stipulated to the admissions of Dilport's photogrammetric analysis and Heagle's composite map.

[12] The plaintiffs also argue that they were especially prejudiced by Heagle and Dilport testifying because the court relied on their testimony in making findings favorable to the defendants. The issue on appeal, however, is whether the court erred by allowing Heagle and Dilport to testify by evaluating whether the plaintiffs had sufficient time to prepare for trial. The credibility of Heagle and Dilport does not factor into this determination. The inquiry as to whether the testimony provided by Heagle and Dilport was credible would only be relevant to determine if it was erroneous to allow them to testify, and, if so, was the harm caused by that error of such magnitude to warrant reversal.