******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# APPENDIX

## KIRK DAVIS ET AL. *v.* PROPERTY OWNERS ASSOCIATION AT MOODUS LAKE SHORES, INC., ET AL.*

Superior Court, Judicial District of Middlesex

File No. CV-12-6006823-S

Memorandum filed February 24, 2016

*Proceedings*

Memorandum of decision after completed trial to court. *Judgment for defendants.*

*Jeffrey M. Sachs*, for the plaintiffs.

*Elizabeth M. Cristofaro*, for the defendants.

*Opinion*

DOMNARSKI, J. The plaintiffs, Kirk B. Davis and Elyssa J. Davis (Davis), own a parcel of land known as 38 Hilltop Road, in Moodus, Connecticut, which abuts land owned by the defendant, Property Owners Association at Moodus Lake Shores, Inc. (Association). Unless otherwise noted, the Association will be referred to as the defendant in this memorandum. The defendants Alan B. Collette, Donald Sama and Gail Sama are officers in the Association (individual defendants). The plaintiffs' property contains a house and driveway, and the defendant's property is comprised of a parking lot and beach area. Both properties have frontage on Hilltop Road. Before the court are the plaintiffs' claims for (1) a declaratory judgment seeking an easement, (2) judgment to quiet title pursuant to General Statutes § 47-33, (3) an easement by implication, (4) an easement by prescription and (5) malicious erection of a fence pursuant to General Statutes §§ 52-520 and 52-480. In their original complaint, the plaintiffs also sought damages for intentional infliction of emotional distress, negligent infliction of emotional distress, private nuisance, civil conspiracy and breach of fiduciary duty; those claims are not before the court. The trial began on November 12, 2014, and continued on November 13, 18 and 19, 2014. By agreement of the parties, the trial was continued to September 15, 2015; thereafter, evidence was presented on September 16 and 17, 2015. The parties submitted posttrial briefs on October 19, 2015; the court heard argument on the briefs on November 19, 2015. The court has conducted two "silent views" of the premises, with the consent of the parties and their counsel, outside of their presence.

The determinative issue in this case is the historical location of the plaintiffs' driveway, (historical driveway) as it relates to the defendant's property. The plaintiffs maintain that the driveway, in order to reach Hilltop Road, has always crossed over the parking area located on the defendant's property. For this reason, they claim they are entitled to the relief they seek. The defendant maintains that the subject driveway was originally adjacent to its property and located entirely on the Davis property. It is the defendant's position that the plaintiffs, in order to provide wider and easier access to their property, unilaterally, and without legal authority, relocated and widened their driveway to travel over the defendant's property.

When the plaintiffs purchased their property in 1998, a small house on the property was used on a seasonal basis. It is undisputed that the plaintiffs made alterations to the driveway in late 2002 or early 2003. These alterations were part of expansion renovations made to the house in order to convert it from a seasonal dwelling to a much larger, year-round house.

An important exhibit in this case is an aerial photograph, commissioned by Golden Aerial Surveys, Inc., which was taken on April 29, 2001. (Exhibit 15.)[1] The parties agree that this photograph shows the plaintiffs' property and driveway, and the defendant's property. The parties do not agree as to where the driveway depicted in the photograph is located in relation to the defendant's property. The date of the photograph is important to the plaintiffs since the evidence established that the location of the driveway had not changed from 1966, the year it was created, to when the photograph was taken in 2001, a period of more than fifteen years. Use of the driveway over the defendant's land, for at least fifteen years, is an essential element of the plaintiffs' easement by prescription claim. The date of the photograph is also significant to the defendant. The aerial photograph was taken less than fifteen years from January 19, 2012, the date the plaintiffs brought this action.

At the trial, the parties called many witnesses and submitted numerous exhibits, including a substantial number of photographs, in their efforts to persuade the court as to the location of the driveway in April, 2001. The task of demonstrating the location and boundary of the driveway was difficult because the topography of the plaintiffs' property has been dramatically altered, and many historical landmarks such as trees and ledge outcroppings have been removed.

There is one important feature of the subject properties which has not changed and is not contested—the boundary line in the area of this dispute. This boundary, between an easterly line of the plaintiffs' property and a westerly line of the defendant's property, is shown and depicted on a map entitled "Property Survey for The Property Owners Association of Moodus Lake Shores, East Haddam, Connecticut, Scale 1 "=20,' Oct. 2, 1990, Richard J. Ziobron, Surveyor" (Ziobron map) (exhibit 14). This boundary line begins at an iron pin or pipe (northern pin) located in the southerly line of Hilltop Road and travels in a generally southerly direction, thirty-five feet, to an iron pin or pipe (southern pin) shown on said map. This southern pin is located in the vicinity of steps on the defendant's property that are situated between the parking lot and the beach area. The original steps are shown on the subject map and replacement steps are located in the same general location. There is no dispute as to the location of this boundary line, and there is also no dispute that the northern pin or pipe, in the southerly line of Hilltop Road, has been in place since the survey was made in 1990.

As stated earlier, the plaintiffs' claim that the driveway for their property has always crossed over the defendant's parking lot in order to reach Hilltop Road. They further maintain that the entrance portion of the driveway has always been located to the east of the

northern pin, upon the defendant's land. This claim is disputed by the defendant; it claims the entrance portion of the driveway has historically been located to the west of the northern pin, solely upon the plaintiffs' land. The first task for the court is to make a factual determination as to the location of the entrance of the historical driveway in the vicinity of Hilltop Road.

## STANDARD OF REVIEW

"It is an abiding principle of our jurisprudence that [t]he sifting and weighing of evidence is peculiarly the function of the trier [of fact]. [N]othing in our law is more elementary than that the trier [of fact] is the final judge of the credibility of witnesses and of the weight to be accorded to their testimony. . . . The trier has the witnesses before it and is in the position to analyze all the evidence. The trier is free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *Welsch* v. *Groat*, 95 Conn. App. 658, 664, 897 A.2d 710 (2006).

"It is well established that [in] a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . The credibility and the weight of expert testimony is judged by the same standard, and the trial court is privileged to adopt whatever testimony he reasonably believes to be credible. . . . It is the quintessential function of the fact finder to reject or accept certain evidence, and to believe or disbelieve any expert testimony. . . . The trier may accept or reject, in whole or in part, the testimony of an expert offered by one party or the other." (Citations omitted; internal quotation marks omitted.) *In re Carissa K.*, 55 Conn. App. 768, 781–82, 740 A.2d 896 (1999); see also *In re Jason R.*, 129 Conn. App. 746, 772–73, 23 A.3d 18 (2011), aff'd, 306 Conn. 438, 51 A.3d 334 (2012).

## DISCUSSION

In fulfilling its responsibility as the finder of fact, this court is reminded of a jury instruction it has given on many occasions to jurors, who are also finders of fact.

"The party who asserts a claim has the burden of proving it by a fair preponderance of the evidence, that is, the better or weightier evidence must establish that, more probably than not, the assertion is true. In weighing the evidence, keep in mind that it is the quality and not the quantity of evidence that is important; one piece of believable evidence may weigh so heavily in your mind as to overcome a multitude of less credible evidence. The weight to be accorded each piece of evidence is for you to decide." Connecticut Judicial Branch Civil Jury Instructions 3.2-1 (revised January 1, 2008), available at https://www.jud.ct.gov/JI/Civil/Civil.pdf.

In this case, the evidence that has weighed heavily on the mind of the court is the photogrammetry[2] analysis

of the Golden Aerial photograph, Exhibit 15. Before discussing this evidence, it is necessary to set forth facts related to physical features of the historical driveway. In 1965, the Association conveyed a portion of land that it owned to Joseph A. Querion and Frances M. Querion (Querions), the plaintiffs' predecessor in title, in order to facilitate access to what is now the plaintiffs' property. A driveway was constructed in 1966 which involved the removal of ledge in the vicinity of Hilltop Road. To prevent erosion of the driveway, an erosion wall built of rocks was constructed in the vicinity of the thirty-five foot long common boundary shown on the Ziobron map. See, in general, affidavit of Rita LaRose, exhibit 9. Prior to when the aerial photograph was taken in April, 2001, Kirk Davis, a plaintiff, placed large timbers on the top of the erosion wall to prevent vehicles from traveling over it. These timbers were in a line, approximately eighteen feet in length.

The defendant presented expert testimony from Edward A. Dilport, an experienced photogrammetrist, and John L. Heagle, a licensed surveyor. Dilport examined the 2001 aerial photograph (exhibit 14) using a stereo image viewer, and other technology, in order to observe the features shown in the photograph and plot elevations of the land. The erosion wall, and the timbers on top of it, were visible in the photograph. Surveyor Heagle obtained information about certain control points in the vicinity of the driveway by taking physical measurements of landmarks shown in the photograph. Utilizing information provided by Heagle, Dilport was able to prepare a map, known as a planimetric map, showing a combination of physical features and elevations. (Dilport map.) (Exhibit 101.) On this map, the vertical elevations are accurate to plus or minus 0.5 feet, and the horizontal locations are accurate to plus or minus one foot.

Surveyor Heagle verified the accuracy of the Ziobron map and the location of the northern pin. Using the same scale, Heagle interposed the courses and distances of the Ziobron map onto the Dilport map to create a composite map. (Exhibit 104.) (Composite map.) This composite map shows the physical features shown on the aerial photograph, as depicted on the Dilport map, in relation to the boundaries of the defendant's property, as shown on the Ziobron map. This composite map shows that plaintiffs' driveway, in 2001, was located to the west of the timbers placed on top of the erosion wall, and entirely on the plaintiffs' property. The map shows that in the vicinity of Hilltop Road, the driveway entrance is located to the west of the northern pin. Furthermore, the elevations on the composite map show that there was an approximate two foot drop in elevation from the plaintiffs' eastern boundary down to the defendant's property. This elevation change corresponds to the location of the erosion wall and timbers located on the eastern edge of the plaintiffs' driveway.

Because of this historical elevation drop, it would be very difficult, if not impossible, for the plaintiffs and their predecessors, to use their driveway to drive onto the defendant's property. Heagle testified, based upon measurements from the map, that the northern pipe was located 2.5 feet from the northern edge of the timbers shown on the planimetric map. The court is persuaded by the analysis and research performed by Dilport and Heagle, and finds their testimony to be credible; the court accepts their opinions and conclusions as evinced by the maps they prepared.

The court finds by a preponderance of the evidence that the historical location of the subject driveway was entirely on the plaintiffs' property, and no portion was located on the defendant's property. Furthermore, the court finds the entrance of the subject driveway was located west of the northern pin. In addition to the evidence from Dilport and Heagle, this finding is supported by other direct evidence. The Ziobron map shows a stone wall running along the entire length of plaintiffs' eastern boundary. This map depiction substantially corresponds to the location of the timbers and elevations shown on the composite map. The Ziobron map does not show any driveway, or portion of one, that traverses the depicted stone wall to reach the defendant's property.

Several photographs depict the historical driveway viewed from its northern end, looking south. It is apparent from these photographs that the driveway was located to the right, or to the west of, the erosion wall and/or large timbers shown in the photographs. See exhibits 51 and 93.

A large tree was located in the vicinity of the western side of the driveway entrance. This tree was removed by Mr. Davis when he regraded the land during the course of alterations to his property. The tree is shown on the aerial photograph, exhibit 15. On the composite map, exhibit 104, the large tree is located south of the paved line of Hilltop Road and is marked by elevation "81.9." Based upon scaled measurements testified to by Dilbert, the tree is approximately six feet west of the western edge of the historical driveway and approximately seventeen feet west of the iron pin. It is undisputed that historically, this tree had a "one way" sign in front of it. This tree, and the one way sign, are depicted in exhibits 93, 46 and 47, and the uphill or western edge of the driveway is shown near the large tree. Considering the width of the driveway, approximately ten feet, and the driveway's proximity to the large tree, as shown in the photographs, it is reasonable to conclude that the driveway is located to the west of the northern pin, in the space between the northern pin and the large tree.

There are "before" and "after" photographs which support the court's finding as to the location of the

driveway. The "before" photograph is exhibit 51, which shows pavement in the foreground, the historical driveway with its timbers, and a green, bushy tree or large shrub on the left side of the photograph. The beach steps shown on the Ziobron map are located to the right of the tree or shrub. The "after" picture is exhibit 68, which also shows pavement in the foreground, and the tree or shrub, which is next to the rebuilt steps. Comparing the photographs and the aforementioned physical features shows that the historical driveway was located in an area shown on the right half of exhibit 68. The northern pin is not shown in exhibit 68, but it is shown in a similarly oriented photograph, exhibit 128.

Two pieces of circumstantial evidence also support the finding that the subject driveway was not located on the defendant's property. First, the deed for the land acquired by the Querions, to be used to access their property, did not contain any grant of easement to use the adjoining land of the Association for purposes of ingress and egress. It is reasonable to infer that such an easement would have been included if it were necessary or desired. Furthermore, there are no later deeds or grants in the chains of title for the plaintiffs' or the defendant's property that establish a right-of-way or easement over the defendant's property in favor of the plaintiffs. Second, if the plaintiffs' predecessors had in fact established a driveway across the common boundary line onto the defendant's property at any time after 1966, it is reasonable to expect that such an encroachment would have been noted on the Ziobron map, which was prepared in 1990. No such driveway is shown on the Ziobron map. The Ziobron map is an "A" class survey, and the standards for such surveys are contained in the "Recommended Standards for Surveys and Maps in the State of Connecticut, Prepared and Adopted by the Connecticut Association of Land Surveyors, Inc., September 13, 1984, Effective January 1, 1987" (exhibit 105). Those standards require that "encroachments apparent from an inspection of the . . . subject premises shall be shown." Exhibit 105, p. 4.

The plaintiffs and their counsel diligently and zealously presented their case; they are commended for their efforts. Although it is not necessary to do so, the court believes it is appropriate to comment on portions of the evidence relied on by the plaintiffs. In light of the evidence pertaining to the physical features of the historical driveway discussed above, the court does not find the affidavit of Surveyor Ziobron (exhibit 10) to be credible. For the same reason, the court does not accept the opinions and testimony of the plaintiffs' surveyor, Ronald C. Hurlburt. The court finds that the testimony of plaintiffs' photogrammetrist, Terry LeRoux, generally agreed with Dilport's testimony and opinions. LeRoux did not have the benefit of any control point data in forming his opinions. The lack of this data diminished the weight of his testimony. The evidence

which supported the defendant's position as to the location of the historical driveway outweighed the claims made by Mr. Davis in his testimony.

The court finds the portions of the LaRose affidavit (exhibit 9) describing the need for the driveway, the date of its construction, and the erosion wall, to be credible. Again, in view of the accepted evidence regarding the driveway, the court does not find the portions of the affidavit related to the location of the driveway to be persuasive.

The plaintiffs called several witnesses, Rochelle Buchanon, Keith Knowles and Ralph Parady, who had entered and driven over the driveway in the years prior to the plaintiffs' purchase of the subject property (driveway witnesses). The testimony of these witnesses was not sufficient to persuade the court that the location of the historical driveway was where the plaintiffs claim. These witnesses testified that it was not possible to make a right turn into the driveway when traveling in an easterly direction down Hilltop Road. This fact is not determinative, since it is undisputed that the driveway could be entered when traveling in a generally southerly direction from Beach Road.

The driveway witnesses also testified that in order to enter the driveway, a driver would have to bear to the right, after traversing down Beach Road. This would be a necessary maneuver when the driveway is located to the west of the northern pin. In general, these witnesses testified that the entrance to the historical driveway was not a good one. The driveway entrance was tilted, awkward, and had a dip, all due to the grade of Hilltop Road. The driveway was narrow, and had ledge on the right side and a stone wall on the left side. From its entrance, the driveway curved to the right and traveled along the plaintiffs' southern boundary.

The historical entrance to the driveway, at its intersection with Hilltop Road, looking south, is depicted in a photograph, plaintiffs' exhibit 93, page 2. The curve of the driveway, the ledge on the right side, and a portion of the stone wall on the left side, are all clearly shown in the photograph. Because of its narrow width, the driveway witnesses testified, a vehicle entering the driveway front-first would have to exit the driveway by backing out. Although a vehicle could be backed out entirely onto Hilltop Road or Beach Road, the witnesses testified that they would often exit the driveway onto Hilltop Road and then perform a "jackknife" turn into the defendant's parking lot when leaving the area.

To the extent some of the witnesses stated that they crossed over the defendant's property, south of the northern pin, in order to enter or exit the driveway, the court does not find these statements to be determinative. The witnesses testified that they were not aware of the northern pin or its location. The Ziobron map

shows that the southern boundary of Hilltop Road is not a straight line, as it passes along the northern boundaries of the plaintiffs' and the defendant's properties, it jogs twenty feet to the north along the defendant's boundary. Similarly, the map shows the southern paved portion of Hilltop Road jogs to the south, from Beach Road, to meet the defendant's paved parking area. For this reason, it is possible the driveway witnesses may have believed they were traveling on the defendant's property, when in fact they were on Hilltop Road. Because of the narrow width of the driveway, its awkward alignment with Hilltop Road, and the drop-off in elevation between the two properties, which came very close to the northern pin, it is not likely that a vehicle entering or exiting the driveway would ordinarily cross onto the defendant's property before driving onto Hilltop Road. This issue is addressed further below.

The plaintiffs submitted numerous photographs, many of them taken at the time they performed the renovations on their property. A number of the photographs depict the ledge removal operations. The court has spent many hours reviewing all of the photographs submitted, as well as the other exhibits in this case. When it visited the site, the court tried, as best it could, to find the place from where the photographs were taken. Many of the photographs were taken from the interior of the lot, looking out to the perimeter. Because of the curvature of the original driveway, the perspective of the photographs, the presence of ledge and construction equipment, it is difficult to discern the features of the historical driveway at its intersection with Hilltop Road. The plaintiffs have not submitted a preconstruction photograph that adequately shows the historical driveway in the location that they claim. The most discernable preconstruction photographs are exhibits 51 and 52. These exhibits show the erosion wall, the line of timbers and, in exhibit 51, pavement, presumably part of Hilltop Road, in the foreground. The exhibits do not show evidence of a driveway over the defendant's property. The photographs relied on by the plaintiffs are not persuasive.

Finally, the plaintiffs argue that the uphill angle of Hilltop Road dictates that the entrance of the historical driveway must have been to the east of the northern pin, since it is not physically possible to enter their property from a location that is west of the northern pin. This argument does not persuade the court. The testimony from the witnesses who used the historical driveway demonstrates that this was not a typical driveway entrance. Because of the upward angle of Hilltop Road, and the downward change in grade from Hilltop Road onto the driveway, the entrance was unusual, and less than ideal. Although challenging, the entrance provided adequate access to the plaintiffs' property. The driveway was used in its historical location for over thirty years before the plaintiffs' alterations in 2003.

The plaintiffs have substantially changed the features of their land in the vicinity of Hilltop Road and the defendant's property. Most significantly, they regraded the area to remove the two foot drop in elevation which formerly existed along the common boundary. As noted earlier, the drop in elevation is shown on the composite map, exhibit 104. The change in elevation is also shown in a preconstruction photograph of the driveway, exhibit 52. The same general area shown in exhibit 52 is shown in exhibit 55, after the plaintiffs regraded the driveway area to remove the drop in elevation. Again, the same area is shown in exhibit 64, after the plaintiffs completed the house expansion and renovations. Exhibit 64 also shows the location of the northern pin, stake in foreground, as well as approximate location of the western edge of the historical driveway, distant stake. Kirk Davis admitted that he placed approximately fourteen cubic yards of fill in the area between the two stakes in order to make a garden. Surveyor Heagle probed in the area between the two stakes and did not find any ledge.

Using common knowledge, it is apparent to the court that if the plaintiffs restored the grade of their own property to the original elevations shown on the composite map, and removed the fill they placed in the vicinity of Hilltop Road, they would have a usable driveway entrance. They could enter their property to the west of the northern pin without crossing the defendant's property. Unless the plaintiffs created a turnaround area on their property, the court acknowledges that the plaintiffs will have to back out their vehicles onto Hilltop Road. The testimony from the driveway witnesses establishes that after driving into the historical driveway front first, it was always necessary to back out; this was the way the historical driveway was utilized. The court will now review the counts of the plaintiffs' complaint in the light of the foregoing factual findings.

### DECLARATORY JUDGMENT

In the first count the plaintiffs seek a declaratory judgment establishing a right-of-way and/or easement over the northwesterly portion of the defendant's property. As discussed below, the plaintiffs have not established the existence of an easement or right-of-way over the defendant's property. See Practice Book § 17-54.

### QUIET TITLE

In the second count, the plaintiffs claim an interest by way of a right-of-way or easement over the northwesterly portion of the defendant's property. They seek a judgment quieting title to the northwesterly portion of the defendant's property. The parties have stipulated that the defendant Property Owners Association is the owner of the property which abuts the plaintiffs' easterly line. As discussed below, the plaintiffs have not

sustained their burden of proof with regard to their claim. Judgment may enter for the defendants on count two.

## EASEMENT BY IMPLICATION

"[A]n implied easement is typically found when land in one ownership is divided into separately owned parts by a conveyance, and at the time of the conveyance a permanent servitude exists as to one part of the property in favor of another which servitude is reasonably necessary for the fair enjoyment of the latter property. . . . In the absence of common ownership . . . an easement by implication may arise based on the actions of adjoining property owners. . . . There are two principal factors to be examined in determining whether an easement by implication has arisen: (1) the intention of the parties; and (2) whether the easement is reasonably necessary for the use and normal enjoyment of the dominant estate." (Internal quotation marks omitted.) *Sanders* v. *Dias*, 108 Conn. App. 283, 288, 947 A.2d 1026 (2008).

In this case there was no servitude in existence when the defendant's predecessor conveyed the subject parcel of land to the Querions, the plaintiffs' predecessor. There was already a house on the adjoining property that the Querions owned, which was accessed, on foot, from Hilltop Road. The parcel conveyed by the defendant's predecessor was to provide vehicle access over a driveway to be constructed on the conveyed parcel. A driveway, the historical driveway, was constructed entirely upon the parcel conveyed. If such a driveway could not have been constructed only upon the Querions' land, it is reasonable to assume a right-of-way over the defendant's adjoining land would have been granted. The plaintiffs have failed to establish an intention to convey an easement over the defendants' property. The historical driveway provided access to the plaintiffs' property from 1966 to 2003. If the plaintiffs reestablish the historical driveway, west of the northern pin, it can once again provide access to the plaintiffs' property. The court cannot find that it is reasonably necessary to provide other access. Judgment may enter for the defendants on count three.

## EASEMENT BY PRESCRIPTION

In the fourth count, the plaintiffs allege that they have acquired an easement by prescription over the defendant's land. "[General Statutes §] 47-37 provides for the acquisition of an easement by adverse use, or prescription. That section provides: No person may acquire a right-of-way or any other easement from, in, upon or over the land of another, by the adverse use or enjoyment thereof, unless the use has been continued uninterrupted for fifteen years. In applying that section, this court repeatedly has explained that [a] party claiming to have acquired an easement by prescription must

demonstrate that the use [of the property] has been open, visible, continuous and uninterrupted for fifteen years and made under a claim of right. . . . The purpose of the open and visible requirement is to give the owner of the servient land knowledge and full opportunity to assert his own rights. . . . To satisfy this requirement, the adverse use must be made in such a way that a reasonably diligent owner would learn of its existence, nature, and extent." (Internal quotation marks omitted.) *Slack* v. *Greene*, 294 Conn. 418, 427, 984 A.2d 734 (2009).

As mentioned at the beginning of this decision, location of the historical driveway on April 29, 2001, was a pivotal element of the plaintiffs' case. If the historical driveway was in fact located upon the defendant's land on that date, the plaintiff would satisfy the fifteen year use requirement for a prescriptive easement. Since the court has found that on April 29, 2001, the historical driveway was located entirely on the plaintiffs' land, the plaintiffs cannot meet this requirement.

There is an issue pertaining to the use of the historical driveway that should be addressed. The northern pin was located approximately two and one-half feet from the end of the erosion wall and timbers. The area to the north and east of the northern pin was, and is, in the vicinity of the paved portion of Hilltop Road. There was insufficient evidence to establish how much of the pin, if any, protruded above the level of the ground. The pin is not visible in exhibit 51, which depicts the area at the end of the erosion wall. In light of these facts, although it is not likely, the court acknowledges that it is possible that a vehicle entering and exiting the historical driveway may have crossed over a portion of the defendant's property, in the area that is adjacent to the two and one-half foot portion of the plaintiffs' property that lay between the end of the timbers and the northern pin. However, the court expressly finds that it was not necessary to travel over the defendant's property to enter the historical driveway from Hilltop Road. Both the Ziobron map, exhibit 14, and the composite map, exhibit 104, show sufficient area on Hilltop Road to allow alignment of a vehicle to enter the historical driveway west of the northern pin. Mr. Knowles, who owned the plaintiffs' property from 1993 to 1998, credibly testified that he never crossed over the defendant's property when using the driveway.

Although the court acknowledges the possibility of occasional travel over a portion of the defendant's property, there was not sufficient evidence presented for the court to find continuous use. Furthermore, there was insufficient evidence for the court to determine the boundaries of the use with reasonable certainty. "A prescriptive right cannot be acquired unless the use defines its bounds with reasonable certainty." *Kaiko* v. *Dolinger*, 184 Conn. 509, 511, 440 A.2d 198 (1981).

Judgment may enter for the defendants on count four.

## MALICIOUS ERECTION OF FENCE

On November 20, 2011, members of the defendant association attempted to install a fence along the common boundary between the plaintiffs' and the defendant's land. The state police intervened, and the fence was not installed. Thereafter, on November 27, 2011, a low, barricade style, fence was installed along the entire length of the common boundary. This fence was removed by the plaintiffs shortly after its installation; it has not been reinstalled.

"[T]he ingredients necessary to state a cause of action under [General Statutes § 52-570 and § 52-480 are] as follows: (1) A structure erected on the owner's (defendant's) land; (2) a malicious erection of the structure; (3) the intention to injure the enjoyment of the adjacent landowner's land by the erection of the structure; (4) an impairment of the value of adjacent land because of the structure; (5) the structure useless to the defendant; (6) the enjoyment of the adjacent landowner's land in fact impaired." *Rapuano* v. *Ames*, 21 Conn. Supp. 110, 111, 145 A.2d 384 (1958).

The following facts are relevant to the determination of this count. As stated previously, the plaintiffs made substantial alterations to their driveway in 2003 by removing an erosion wall and lowering the elevation of their property to meet the elevation of the defendant's property. This change in grade allowed vehicles to travel over the common boundary and permitted vehicles to travel in the vicinity of stairs on the defendant's property, which provided access to the beach. Between 2006 and 2011 the parties discussed the issue of the plaintiffs' new driveway and the stairs. Several arrangements for protecting the safety of people using the stairs were tried, including a curb stop, a large planter, and a short barricade style fence. None of these arrangements produced long-lasting results that were acceptable to both parties. In September, 2011, Collette, president of the defendant Association, consulted an attorney about the rights and obligations of the Association regarding the safety of members using the beach area, and the Davis driveway. In a letter to Collette dated September 20, 2011, the attorney stated: "[T]he Association is within its legal rights and authority to act in connection with the use of its property by any party. . . . [T]he Association is required to act in connection with the safety and protection of its members. . . . [F]ailure is (sic) act may result in a liability claim against the Association. . . . Further, failure of the Association to assert its rights may result in a future claim of easement by extended use." Exhibit 38. After receipt of this letter the Association took the steps, described above, to install a fence along the common boundary.

The court finds that the plaintiffs have failed to prove

the elements of malicious erection of a fence by a preponderance of the evidence. It is apparent that at the time the fence was installed the relationship between the parties was strained, if not adversarial. However, considering all the circumstances, the court cannot find that the actions of the defendant Association were malicious. The Association had been advised by counsel that failure to take action regarding the issues related to the plaintiffs' driveway could have negative consequences to the Association. The fence fulfilled a useful purpose to the defendant, protecting people using its stairs from being struck by vehicles entering or exiting the plaintiffs' property. Although a fence would impair the plaintiffs' use of their property at the time, the plaintiffs presented insufficient evidence to establish that the fence was installed by the Association with the intention to injure the plaintiffs' enjoyment of their land. In view of the very short time that a fence was in place, the court cannot find that the value of the plaintiffs' property was impaired. Judgment may enter for the defendants on count five.

In their brief, the plaintiffs requested an order prohibiting any vertical obstruction above the northern pin which would obstruct the opening to both the beach parking lot and the plaintiffs' driveway. The court has found that the plaintiffs have not established legal rights over the defendant's property which would allow the court to enter such an order. However, the court does find that prior to the driveway alterations, the area between the northern end of the timbers/erosion wall and the northern pin, a distance of two and one-half feet, was unobstructed. See exhibit 51. This unobstructed area was in the vicinity of the intersection of the paved portion of Hilltop Road, the defendant's paved parking lot, and the entrance of the historical driveway. The court observes that the lack of an obstruction in this area during the thirty plus years the historical driveway existed probably benefitted everyone operating a motor vehicle in the vicinity of this area.

## CONCLUSION

The court declines to enter the declaratory judgment requested by the plaintiffs in count one. As to count two, there is no need to enter a judgment quieting title, the plaintiffs have failed to establish an interest in the defendant's property. Judgment may enter for the defendants in counts three, four and five.

* Affirmed. *Davis* v. *Property Owners Assn. at Moodus Lake Shores, Inc.*, 183 Conn. App. 690,     A.3d     (2018).

[1] To facilitate record-keeping, counsel for the plaintiffs and the defendants agreed that their respective exhibits would all be marked with a "plaintiff's exhibit" sticker.

[2] Photogrammetry is the science of making reliable measurements using photographs, especially aerial photographs. See Webster's Third New International Dictionary (1993).