******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

KIRK B. DAVIS ET AL. *v.* PROPERTY OWNERS
ASSOCIATION OF MOODUS
LAKE SHORES, INC.
(AC 44707)

Prescott, Cradle and Clark, Js.

*Syllabus*

The plaintiff homeowners sought, inter alia, a judgment declaring that the
defendant, a property owners association, violated the defendant's gov-
erning documents and restrictive covenants by improperly preventing
the plaintiffs from accessing their driveway. The plaintiffs, whose real
property abutted a portion of the association's property, claimed that
the only means of access from their property to a certain public road
was via a driveway that was located over a portion of the defendant's
property and that the defendants had improperly barricaded the drive-
way by erecting a fence along the common boundary between the two
properties. The plaintiffs had previously brought an action in the trial
court to determine whether the plaintiffs had an easement by implication
over the defendant's property. The trial court determined that the plain-
tiffs had failed to establish an interest in the defendant's property so
as to grant an easement and rendered judgment for the defendant, which
this court affirmed on appeal. Thereafter, the plaintiffs brought the
present action, and the defendant filed a motion for summary judgment,
claiming that the plaintiffs' claims were barred by the doctrine of res
judicata. The trial court granted the defendant's motion, and the plaintiffs
appealed to this court. *Held* that the trial court did not err in concluding
that the plaintiffs' claims in the present action were barred by the
doctrine of res judicata: the claims asserted in both actions arose out
of the same series of connected transactions, as both actions concerned
the same parties, the same property, the ability of the plaintiffs to access
the road from their residence, and the defendant's legal capacity to
construct a barrier between the two properties, and both actions sought
similar remedies; moreover, although the plaintiffs argued that their
present claims were separate and distinct from the claims raised in the
first action, they failed to demonstrate why their present claims could
not have been brought in the first action and, therefore, the plaintiffs
had an adequate opportunity to litigate the claims of alleged breach of
governing documents and deeded rights at the time of the first action
and their present claims were merely additional legal theories arising
from the same transaction or nucleus of operative facts; furthermore,
the combined facts of both actions constituted a single transaction that
could have formed a convenient unit for the trial court in the first
action, and their treatment as a unit would not have been unexpected
by the parties.

Argued April 11 2022—officially released August 2, 2022

*Procedural History*

Action for, inter alia, a judgment declaring that the
defendant improperly prevented the plaintiffs from
accessing their driveway in violation of the defendant's
restrictive covenants and deeded property rights, and
for other relief, brought to the Superior Court in the
judicial district of Middlesex, where the court, *Frech-
ette, J.*, granted the defendant's motion for summary
judgment and rendered judgment thereon, from which
the plaintiffs appealed to this court. *Affirmed.*

*Scott W. Jezek*, with whom was *Deborah L. Barbi*,
for the appellants (plaintiffs).

*Troy Bataille*, with whom was *Sam Westbrook*, for the appellee (defendant).

*Opinion*

CRADLE, J. In this property dispute action, the plaintiffs, Kirk B. Davis and Elyssa J. Davis, appeal from the summary judgment rendered by the trial court in favor of the defendant, Property Owners Association of Moodus Lake Shores, Inc. (association). On appeal, the plaintiffs claim that the court improperly concluded that the doctrine of res judicata barred the present action. We affirm the judgment of the trial court.

The record before the court, including this court's decision in *Davis* v. *Property Owners Assn. at Moodus Lake Shores, Inc.*, 183 Conn. App. 690, 193 A.3d 1245 (2018), viewed in the light most favorable to the plaintiffs as the nonmoving party, reveals the following facts and procedural history. In 1998, the plaintiffs purchased a parcel of land located at 38 Hilltop Road in East Haddam (residence). Id., 695. Although the residence originally was intended for use as a seasonal property, between 2002 and 2003, the plaintiffs made significant renovations to the property in order to convert it into a year-round dwelling. Id., 695–96. The residence currently is comprised of a single-family dwelling and appurtenant garage, as well as a parking area and driveway.

Ownership of the residence includes and is subject to membership in the association,[1] a beachfront association created by No. 75-56 of the 1975 Special Acts (S.A. 75-56). The association governs the properties within its territorial boundaries according to the regulations and bylaws set forth in S.A. 75-56 (governing documents), and is charged with "provid[ing] for the improvement of the land [within the association], its maintenance as a residential and resort area and for the health, comfort, safety protection and convenience of the inhabitants thereof." S.A. 75-56, § 3.

In addition to its responsibility as a governing body, the association also owns certain real property located within the community. One such parcel directly abuts the eastern edge of the residence and is improved by a parking area and community beach area (association property). Both the residence and the association property have frontage on Hilltop Road.

At the northwest corner of the association property is a paved parking area, which runs adjacent to the plaintiffs' driveway and forms part of a thirty-five foot common boundary shared with the residence. See *Davis* v. *Property Owners Assn. at Moodus Lake Shores, Inc.*, Superior Court, judicial district of Middlesex, Docket No. CV-12-6006823-S (February 24, 2016) (reprinted at 183 Conn. App. 704, 193 A.3d. 1254), aff'd, 183 Conn. App. 690, 193 A.3d. 1245 (2018). The parking area is situated between the plaintiffs' driveway and Hilltop Road, and, following renovation on the residence, had been used by the plaintiffs as a means of

ingress and egress from their property to Hilltop Road. Id. As such, the renovated driveway allowed vehicles to travel over the common boundary and permitted vehicles to travel in the vicinity of stairs on the association property, which provided access to the beach. *Davis* v. *Property Owners Assn. at Moodus Lake Shores, Inc.*, supra, 183 Conn. App. 696. In 2011, as a means of protecting its property rights and ensuring the safety of pedestrians using the beach stairs, the association erected a fence along the common boundary between the residence and the association property. Id., 696–97. The plaintiffs removed the fence shortly after it had been installed.

On January 19, 2012, the plaintiffs filed a ten count complaint[2] against the association seeking, inter alia, to quiet title to the strip of parking area that provided access and egress to Hilltop Road; a declaratory judgment establishing an easement over the same; a permanent injunction preventing the association from constructing any structure or barrier that would adversely affect their ability to access and egress the residence; monetary damages for the malicious erection of a fence;[3] and monetary damages for tortious conduct.[4] See generally *Davis* v. *Property Owners Assn. at Moodus Lake Shores, Inc.*, supra, Superior Court, Docket No. CV-12-6006823-S.

A bench trial was held between November, 2014, and September, 2015, at which the parties presented evidence, including numerous photographic exhibits depicting the properties at issue, as well as witness testimony describing the historical use of the association parking area. See *Davis* v. *Property Owners Assn. at Moodus Lake Shores, Inc.*, supra, 183 Conn. App. 698–99. On February 24, 2016, the court, *Domnarski, J.*, issued a memorandum of decision rendering judgment in favor of the association on each count of the operative complaint. Id., 697, 704. Specifically, the court determined that the plaintiffs had "failed to establish an interest in the [association's] property," so as to grant an easement by prescription or implication, and that "the plaintiffs presented insufficient evidence to establish that the fence was installed by the association with the intention to injure the plaintiffs' enjoyment of their land." *Davis* v. *Property Owners Assn. at Moodus Lake Shores, Inc.*, supra, Superior Court, Docket No. CV-12-6006823-S. The plaintiffs subsequently appealed to this court, claiming that the trial court improperly denied their motions in limine that sought to preclude the association's experts from testifying and misapplied the law of easements by failing to grant them an easement by implication. See *Davis* v. *Property Owners Assn. at Moodus Lake Shores, Inc.*, supra, 183 Conn. App. 691–92. This court affirmed the judgment of the trial court on July 24, 2018.[5] Id., 703–704.

On August 27, 2018, following the conclusion of litiga-

tion and all potential appeal periods in the first action, the association sent notice to the plaintiffs via certified mail that it intended to reinstall the fence along the boundary between the residence and the association property. The plaintiffs never responded to the correspondence and, on September 29, 2018, the association erected a second fence separating the two properties.

On June 17, 2019, the plaintiffs commenced the present action by way of a four count complaint and a motion for a temporary injunction.[6] Count one of the complaint alleged that the association interfered with the plaintiffs' rights and privileges as members of the association, in violation of S.A. 75-56, by failing either to remove the fence or to otherwise provide the plaintiffs with reasonable access to enter the residence. Count two alleged that the association breached its membership contract with the plaintiffs by obstructing and preventing the plaintiffs from accessing the residence, thereby imposing an unauthorized sanction and denying the plaintiffs quiet enjoyment of their property. Count three claimed that the association wrongfully restricted the plaintiffs' use of the association's common areas. Count four alleged that the association maliciously erected a structure with the intent to "annoy, injure and deprive the plaintiffs of the full and reasonable use and engagement of [the residence]" in violation of General Statutes § 52-570.[7]

On August 7, 2020, the association filed a motion for summary judgment, arguing that the plaintiffs' claims were barred by the doctrine of res judicata. In its memorandum of law in support of its motion for summary judgment, the association contended that (1) the parties to both actions were the same, (2) the first action was rendered on the merits, (3) the parties had an adequate opportunity to litigate the matter fully, and (4) the claims were the same. Specifically, the association alleged that the parties had "already litigated [the] exact property line [and] fence, and the issues pertinent to both," and that the plaintiffs' first three counts, each of which sounded in breach of contract, could have been brought in the first action.

On September 8, 2020, the plaintiffs filed a memorandum of law in opposition to the association's motion for summary judgment, in which the plaintiffs argued, inter alia, that their claims were separate and distinct from the claims asserted in the first action. Specifically, the plaintiffs contended that their claims in the first action, which determined whether the plaintiffs had a claim of right over association property, arose out of a different "factual grouping" than their present claims, which sought, inter alia, to enforce the plaintiffs' rights as association members. The court, *Frechette, J.*, heard argument from both parties on the association's motion for summary judgment on January 14, 2021.

On April 26, 2021, the court granted the association's

motion for summary judgment. In its memorandum of decision, the court determined that there was "no evidence to suggest that the plaintiffs were in any way precluded from alleging a breach of contract claim or any other claim against the [association]" in the first action. Accordingly, the court concluded that the plaintiffs' claims were barred by the doctrine of res judicata. This appeal followed.

We begin our analysis by setting forth our well established standard of review on appeal following a trial court's granting of a motion for summary judgment and the relevant legal principles that govern our resolution of the plaintiffs' claim. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The courts are in entire agreement that the moving party . . . has the burden of showing the absence of any genuine issue as to all the material facts . . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the [nonmoving] party must present evidence that demonstrates the existence of some disputed factual issue. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Peterson* v. *iCare Management, LLC*, 203 Conn. App. 777, 786, 250 A.3d 720 (2021). "Summary judgment is appropriate to determine whether a claim is barred by the doctrine of res judicata." *Santorso* v. *Bristol Hospital*, 127 Conn. App. 606, 614, 15 A.3d 1131 (2011), aff'd, 308 Conn. 338, 63 A.3d 940 (2013).

"Res judicata, or claim preclusion, express[es] no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest. . . . Generally, for res judicata to apply, four elements must be met: (1) the judgment must have been rendered on the merits by a court of competent jurisdiction; (2) the parties to the prior and subsequent actions must be the same or in privity; (3) there must have been an adequate opportunity to litigate the matter fully; and (4) the same underlying claim must be at issue. . . . Res judicata bars the relitigation of claims actually made in the prior action *as well as any*

*claims that might have been made there. . . .* Public policy supports the principle that a party should not be allowed to relitigate a matter which it already has had an opportunity to litigate." (Emphasis added; internal quotation marks omitted.) *Peterson* v. *iCare Management, LLC*, supra, 203 Conn. App. 787. "Thus, res judicata prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." (Internal quotation marks omitted.) *Wheeler* v. *Beachcroft, LLC*, 320 Conn. 146, 157–58, 129 A.3d 677 (2016).

On appeal, the parties do not contest the application of the first three elements, namely, that the first action was rendered on the merits by a court of competent jurisdiction, that the parties to both actions are the same, and that the parties previously had an opportunity to litigate the matter fully. Rather, the dispute centers on whether the plaintiffs' claims in the present action are the same as those raised in the first action, or whether the present claims could have been raised in the first action. The plaintiffs argue that their present claims, which arise out of their "rights as [association members]," as set forth in S.A. 75-56, the governing documents, and the restrictive covenants in their deed of purchase, are separate and distinct from the claims raised in the first action, which sought "determination of prescriptive rights and adverse possession." Accordingly, they contend that the court improperly determined that their present claims could have been raised in the first action. In response, the association argues that the plaintiffs' claims arise out of the "same underlying factual circumstances" and, therefore, "could have been brought in the first lawsuit." We agree with the association.

"[For] res judicata [to bar] claims that were not actually litigated in a prior action, the previous and subsequent claims must be considered the same for res judicata to apply. . . . To determine whether claims are the same for res judicata purposes, [our Supreme Court] has adopted the transactional test. . . . Under the transactional test, res judicata extinguishes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. . . . What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. . . . [E]ven though a single group of facts may give rise to rights for several different kinds of relief, it is still a single cause of action. . . . In applying the transactional test, we compare the complaint in the [present] action with the pleadings and

the judgment in the earlier action." (Citations omitted; internal quotation marks omitted.) *Wheeler* v. *Beachcroft, LLC*, supra, 320 Conn. 159–60.

After closely reviewing the complaint in the present case, and comparing it against the pleadings and judgment in the first action, we conclude that the claims asserted in both actions arise out of the same series of connected transactions and, therefore, are the "same" under the doctrine of res judicata. See *Fisk* v. *BL Cos.*, 185 Conn. App. 671, 681–82, 198 A.3d 160 (2018). Indeed, both actions concern the same parties; the same strip of association property parking lot separating the residence from Hilltop Road; the plaintiffs' ability to access Hilltop Road from the residence; and the association's legal capacity to construct a barrier between the two properties. Furthermore, both actions seek similar remedies, namely, a court order enjoining the association from constructing a fence separating the two properties, or, in the alternative, a declaration that the plaintiffs' enjoy a legal right to cross over and use the association property. In particular, the fourth count in the present action and the fifth count in the first action are virtually identical; both allege malicious erection of a structure in violation of § 52-570,[8] and seek relief pursuant to General Statutes § 52-480.[9]

With regard to the first three counts, although the plaintiffs did not specifically allege in the first action that the association violated their rights set forth in the association's governing documents and the plaintiffs' deed of purchase, it is well established that the doctrine of res judicata "bars not only subsequent relitigation of a claim previously asserted, but subsequent relitigation of any claims relating to the same cause of action . . . which might have been made. . . . [T]he appropriate inquiry with respect to [claim] preclusion is whether the party had an *adequate opportunity to litigate the matter in the earlier proceeding*." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Nipmuc Properties, LLC* v. *Meriden*, 130 Conn. App. 806, 815, 25 A.3d 714, cert. denied, 302 Conn. 939, 28 A.3d 989 (2011), cert. denied, 565 U.S. 1246, 132 S. Ct. 1718, 182 L. Ed. 2d 253 (2012); see also *Massey* v. *Branford*, 119 Conn. App. 453, 469–70, 988 A.2d 370 ("[a] judgment is final not only as to every matter which was offered to sustain the claim, *but also as to any other admissible matter which might have been offered for that purpose*" (emphasis in original; internal quotation marks omitted)), cert. denied, 295 Conn. 921, 991 A.2d 565 (2010).

It is undisputed that the plaintiffs became association members in 1998, subject to the governing documents and restrictive covenants set forth in their deed, when they purchased the residence from its prior owners. In fact, as part of their complaint in the first action, the plaintiffs alleged that they were association members

and submitted into evidence the same governing documents they now rely on in asserting their present claims. See *Davis* v. *Property Owners Assn. at Moodus Lake Shores, Inc.*, supra, Superior Court, Docket No. CV-12-6006823-S. Accordingly, the plaintiffs' claims in the present action, alleging the association's violation of S.A. 75-56, governing documents, and deeded rights, were ripe for adjudication and could have been brought in the first action. Although the plaintiffs repeatedly have argued that their present claims are separate and distinct from the claims raised in the first action, they have failed to demonstrate why their present claims could not have been raised during the prior litigation.[10] We conclude, accordingly, that the plaintiffs had an adequate opportunity to litigate the alleged breach of governing documents and deeded rights claims at the time of the first action and that their present claims are merely "additional . . . legal theories" arising from the same transaction or nucleus of operative facts. *Wheeler* v. *Beachcroft*, supra, 320 Conn. 157. The combined facts of both actions, therefore, constituted a single transaction that would have formed a convenient trial unit for the trial court in the first action, and their treatment as a unit would not have been unexpected by the parties. See *Fernandez* v. *Mac Motors, Inc.*, 205 Conn. App. 669, 677, 259 A.3d 1239 (2021). As such, the court did not err in concluding that the plaintiffs' claims in the present action are barred by the doctrine of res judicata.[11]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiffs' deed of purchase contains certain restrictive covenants, which limit the plaintiffs' use of the property in accordance with the association's bylaws and regulations set forth in No. 75-56 of the 1975 Special Acts.

[2] The plaintiffs' complaint in the first action contained the following prayer for relief: "1. A declaratory judgment determining whether or not the plaintiffs have a right of way and/or easement over the land of the . . . association; 2. If the plaintiffs have such a right, the extent of permissible use, and fixing the location of said right of way and/or easement; 3. A judgment determining the rights of the parties in or to the said northwesterly portion of the association parcel and settling title thereto in accordance with § 47-31 of the . . . General Statutes; 4. An order enjoining and restraining the [association] from maintaining, erecting, constructing or building any fence, structure or barrier, that would adversely affect the plaintiffs' ability to access and egress its property; 5. A mandatory injunction requiring the [association] to remove any such fence, structure or barrier; 6. Money damages; 7. An order pursuant to . . . General Statutes § 33-1090 removing the . . . directors of the association and barring them from serving as directors for a period of time prescribed by the court; 8. An injunction against the malicious erection of any structure intended to annoy and injure the plaintiffs in respect to their use and enjoyment of the premises, pursuant to . . . General Statutes § 52-480; 9. Attorney's fees; 10. Such other and further relief as to equity appertains." *Davis* v. *Property Owners Assn. at Moodus Lake Shores, Inc.*, Superior Court, judicial district of Middlesex, Docket No. CV-12-6006823-S.

[3] The court, *Aurigemma J.*, subsequently granted the defendants' motion for nonsuit on "the portion of count five seeking monetary damages." *Davis* v. *Property Owners Assn. at Moodus Lake Shores, Inc.*, supra, 183 Conn. App. 695.

[4] Counts six through ten, which alleged, respectively, that the association and its directors committed intentional infliction of emotional distress, negligent infliction of emotional distress, private nuisance, civil conspiracy, fraud,

and breach of fiduciary duties and authority, were later nonsuited. See *Davis* v. *Property Owners Assn. at Moodus Lake Shores, Inc.*, supra, 183 Conn. App. 694–95.

[5] The plaintiffs did not seek certification to appeal further.

[6] In their motion for a temporary injunction, the plaintiffs sought an order restraining the association, "its agents, servants, and employees, from erecting any barricade across the plaintiffs' driveway entrance or restricting vehicular access to the plaintiffs' property in any manner until further order of [the] court." The plaintiffs subsequently withdrew the motion.

[7] The plaintiffs' complaint contained the following prayer for relief: "1. A declaratory judgment that the [association] has wrongfully violated [S.A.] 75-56 of the . . . state legislature by wrongfully barricading their driveway; 2. A temporary and permanent injunction, pursuant to . . . General Statutes § 52-480, ordering the [association] to remove and refrain from installing or erecting any barricade preventing the plaintiffs from the reasonable use and access to their driveway; 3. A declaratory judgment that the common areas of the [association] are dedicated to the use in common of its members, including the plaintiffs, free from conduct impeding that use and enjoyment; 4. A declaratory judgment of the court that the conduct of the [association] in erecting a barricade to the plaintiffs' driveway violates the provisions of . . . § 52-570; and 5. All such other and further relief as may be available to the plaintiffs at law or in equity."

[8] General Statutes § 52-570 provides: "An action may be maintained by the proprietor of any land against the owner or lessee of land adjacent, who maliciously erects any structure thereon, with intent to annoy or injure the plaintiff in his use or disposition of his land."

[9] General Statutes § 52-480 provides: "An injunction may be granted against the malicious erection, by or with the consent of an owner, lessee or person entitled to the possession of land, of any structure upon it, intended to annoy and injure any owner or lessee of adjacent land in respect to his use or disposition of the same."

[10] The plaintiffs argue that the present action is analogous to *Mierzejewski* v. *Laneri*, Superior Court, judicial district of Middlesex, Docket No. CV-07-5003402-S (February 23, 2010), rev'd on other grounds, 130 Conn. App. 306, 23 A.3d 82, cert. denied, 302 Conn. 932, 28 A.3d 344 (2011). In that case, the trial court concluded that the doctrine of res judicata did not bar the plaintiff from seeking a determination of the boundary line between his property and the defendant's property, where the plaintiff previously had brought an action seeking to extinguish the defendant's easement burdening the plaintiff's property. See id; see also *Mierzejewski* v. *Brownell*, Superior Court, judicial district of Middlesex, Docket No. CV-03-0100645-S (September 15, 2005), aff'd, 102 Conn. App. 413, 925 A.2d 1126, cert. denied, 284 Conn. 917, 931 A.2d 936 (2007). Specifically, the court concluded that *Laneri*, "although involving much of the same evidence as presented in the first proceeding, d[id] not arise out of the 'same factual grouping' that formed the basis of the claims in the first [proceeding]. Accordingly, the claim in this case is not barred by res judicata." *Mierzejewski* v. *Laneri*, supra.

We find the plaintiffs' reliance on *Laneri* to be misguided. In *Brownell*, the plaintiff sought unsuccessfully to extinguish the defendant's easement over his property. See *Mierzejewski* v. *Brownell*, 102 Conn. App. 413, 414, 925 A.2d 1126, cert. denied, 284 Conn. 917, 931 A.2d 936 (2007). After this court affirmed the trial court's decision; id.; the plaintiff brought a second action seeking to clarify and determine the location of that easement. See *Mierzejewski* v. *Laneri*, supra, Superior Court, Docket No. CV-07-5003402-S. Accordingly, although the two actions arose out of a similar factual setting, they sought different remedies and could not have been maintained simultaneously. Indeed, there was no reason for the common plaintiff in both actions to commence an action seeking to clarify the location of the easement until the court had determined that a valid easement existed.

In the present case, by contrast, the plaintiffs' claims concerning the association's governing documents and their deeded rights seek the same remedy as their prior prescriptive easement and quiet title claims, and could adequately have been brought in the first action. We conclude, therefore, that the decisions in *Brownell* and *Laneri* are distinguishable from the present action.

[11] The plaintiffs also claim that the court improperly rendered summary judgment as a matter of law and, instead, should have considered "the facts and circumstances as applied to [the plaintiffs] as members of the . . . association and balance[d] their respective rights." Specifically, the plaintiffs contend that the court should have considered how the association's govern-

ing documents applied to the plaintiffs, as association members, and should have weighed the plaintiffs' interest, as year-round residents of the association community, against the association's interest in maintaining a seasonal community parking lot.

Although this claim is not entirely clear, we interpret the plaintiffs' contention as arguing that the court should have considered the merits of their governing documents and deeded rights claims before disposing of the action on summary judgment. Indeed, the plaintiffs cite Justice Vertefeuille's concurring opinion in our Supreme Court's decision in *Wykeham Rise, LLC* v. *Federer*, 305 Conn. 448, 478, 486, 52 A.3d 702 (2012), for the proposition that a "latent ambiguity" involved in the application of a restrictive covenant creates a question of fact inappropriate for resolution on summary judgment. What the plaintiffs overlook, however, is that the pertinent legal issue on summary judgment was whether their claims survived the application of res judicata, not the extent or application of the association's governing documents and restrictive covenants set forth in their deed. To reiterate, the plaintiffs' claims concerning their rights as association members were available to them at the time of the first action. See *Nipmuc Properties, LLC* v. *Meriden*, supra, 130 Conn. App. 815.

To the extent that the plaintiffs argue that their interest in bringing a just claim outweighs the interest in finality served by the doctrine of res judicata; see *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 601–603, 922 A.2d 1073 (2007) (discussing public policy exception to claim preclusion); we conclude that the court properly determined that the plaintiffs' claims were barred. The plaintiffs had an opportunity to bring their present claims in the first action and allowing them to proceed would risk undermining the "doctrine's underlying policies," including the prevention of repetitive litigation and inconsistent judgments. (Internal quotation marks omitted.) Id., 601. We conclude, accordingly, that the balance of public policy considerations weighs in the association's favor.